The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Tristan TOLER, Defendant–Appellant.

No. 96CA1424.

Colorado Court of Appeals,
Div. V.

Sept. 17, 1998.

As Modified on Denial of Rehearing
Nov. 19, 1998.

Certiorari Granted July 12, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney

General, Richard A. Westfall, Solicitor General, John J. Fuerst, III, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Tristan Toler, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. We reverse and remand for a new trial.

 Defendant shot and killed the victim after the victim and the victim's cousin had chased him and another youth into a third party's fenced yard, believing that the youths had stolen a car stereo. Defendant's companion climbed over the eight-foot fence and escaped, but defendant was still in the yard when the victim and his cousin ran into the yard. At trial, defendant claimed that he had fired his gun in self-defense, acting out of fear when he saw the victim reach for what defendant thought was a gun.

On appeal, defendant contends that the trial court erred in instructing the jury, as part of the self-defense instruction, that he was not required to retreat to a position of no escape in order to claim the right to self-defense if he "was where he had a right to be." Specifically, he argues that inclusion of this language, which is not in the self-defense statute, § 18–1–704, C.R.S.1997, may have induced the jurors to conclude that he had lost his right of self-defense because he was on someone else's property when he exercised that right. We agree.

Over defense objection, the trial court included the following paragraph in its self-defense instruction:

A person is not justified in using physical force if (1) with the intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person; or (2) he is the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force. However, if the Defendant was not the initial aggressor, *and was where he had a right to be*, he was not required to retreat to a position of no escape in order to claim the right to employ force in his own defense. (Emphasis supplied.)

The first sentence of the quoted paragraph tracks the language of § 18–1–704(3)(a) & (b), C.R.S.1997. The second sentence is not in the statute, but is taken verbatim from *COLJI-Crim.* No. 7:68–7(15)(1983). That pattern jury instruction states a limitation on the common-law "retreat to the wall" doctrine that was first recognized in Colorado in *Boykin v. People,* 22 Colo. 496, 45 P. 419 (1896). In *Boykin,* a Denver police officer had shot an Arapahoe County deputy sheriff while trying to arrest him. The supreme court held that a defendant who is "where he has a right to be, as, for example, a police officer engaged in making an arrest," and who did not provoke the assault, is not obliged to retreat before defending himself. *Boykin v. People, supra,* 22 Colo. at 504, 45 P. at 422.

In 1971, the General Assembly enacted § 18–1–704, which sets forth the circumstances in which a person is justified in using physical force to defend himself or herself or a third person. Section 18–1–704(1), C.R.S. 1997, states:

Except as provided in subsections (2) and (3) of this section, a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

Sections 18–1–704(2) and 18–1–704(3), C.R.S. 1997, state the exceptions to the general rule of § 18–1–704(1). However, the exceptions do not include a situation in which the person is not "where he had a right to be." Nor is such a limitation on the right of self-defense found anywhere else in the statute.

*COLJI–Crim.* No. 7:68–7(15), the source of the challenged language included in the instruction in this case, has been characterized as having been "codified in § 18–1–704(3)(b)." *People v. Willner,* 879 P.2d 19 (Colo.1994) (fn.9). However, § 18–1–704(3)(b) in fact codifies only the "initial aggressor" limitation, not the "where he had a right to be" limitation found in the pattern jury instruction and in *Boykin.*

We acknowledge that since 1971 the supreme court has cited both *COLJI–Crim.* No. 7:68–7(15) and the *Boykin* excerpt with the "where he has a right to be" language without suggesting that this limiting language was inconsistent with § 18–1–704 or otherwise incorrect. However, in *Idrogo v. People,* 818 P.2d 752 (Colo.1991), which quotes *Boykin,* the issue was whether the jury should have been instructed that defendant need not have retreated before using deadly force if he was not the initial aggressor. In *People v. Willner, supra,* which quotes the pattern jury instruction in a footnote, the supreme court upheld the trial court's decision to give an instruction based on § 18–1–704 rather than defendant's tendered instruction based on the pattern instruction. Whether the "where he has a right to be" language remains a correct statement of the law was not an issue in either case. Nor was the issue presented or decided in *People v. Watson,* 671 P.2d 973 (Colo.App.1983), which is cited in the pattern jury instructions as the authority for *COLJI–Crim.* No. 7:68–7(15).

Criminal statutes are to be strictly construed in favor of the accused, *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977) (construing statutory provisions relating to affirmative defense of voluntary intoxication), and cannot be extended either by implication or construction. *People v. Olinger,* 39 Colo.App. 491, 566 P.2d 1367 (1977). Although we are not precluded from reliance on the common law to aid in construing the criminal code, when statutory meaning is clear, we must give effect to that meaning. *People v. Hare,* 782 P.2d 831 (Colo.App.1989), *aff'd,* 800 P.2d 1317 (Colo.1990).

Where the General Assembly has spelled out the circumstances in which a person may *not* use physical force to defend himself or herself, we will not add an additional limitation beyond those expressly set forth in the statute.

We therefore hold that, because the instruction imposed a limitation on the right to claim self-defense that is not in the self-defense statute, it was error to instruct the jury that defendant had to be "where he had a right to be" before he could employ force in his own defense without first retreating.

We further hold that the error was not harmless. Defendant's companion had retreated by climbing over the fence and out of the yard, but defendant had not done so. The jury thus had to determine whether defendant could nevertheless justifiably claim self-defense. In closing argument, the prosecutor argued that defendant had no right to assert self-defense because, among other reasons, he was the initial aggressor. She added:

> He does not get the self-defense claim for yet another reason. He also wasn't in a place where he was supposed to be. He was in somebody else's yard. He doesn't get it for that reason.

It cannot be determined whether the jury rejected defendant's self-defense claim because it found that he was not where he had a right to be, or for some other reason. Because we cannot say with any fair assurance that the erroneous instruction did not substantially influence the verdict or impair the fairness of the trial, the error cannot be deemed harmless. *See Lybarger v. People,* 807 P.2d 570 (Colo.1991).

## II.

Defendant raises additional challenges to the jury instructions given in his case. Because certain of the issues he raises may arise on remand, we address them here.

### A.

Defendant contends that the court erred in refusing to instruct the jury that the "reasonable person" referenced in the self-defense instruction must be measured by a

subjective, not an objective, standard. We do not agree.

 Self-defense under § 18–1–704 takes into account both the reasonable belief and the actual belief of the defendant. *People v. Willner,* 879 P.2d 19 (Colo.1994). A court may properly refuse to give an instruction which calls only for a subjective test. See *Bustamonte v. People,* 157 Colo. 146, 401 P.2d 597 (1965).

Here, defendant tendered an instruction which defined "reasonable person" as subjective:

> A "reasonable person" under Instruction No. ,,, is subjective. The standard is a reasonable person in Tristan Toler's situation and circumstance. All circumstances must be weighed in determining whether Tristan Toler acted reasonably in this situation.

The court refused this instruction and instead instructed the jury in its self-defense instruction that:

> You must weigh all relevant circumstances to determine whether a person asserting the defense of self-defense has acted as a reasonable person would act in similar circumstances.

This language is consistent with *Sanchez v. People,* 820 P.2d 1103, 1108 (Colo.1991) ("[F]act finder must weigh all relevant circumstances to determine whether a person asserting the defense of self-defense has acted as a reasonable person would act in similar circumstances"). The trial court did not err in giving this instruction rather than the instruction tendered by defendant.

### B.

 Defendant also contends that the trial court erred in refusing to instruct the jury that fists can be a deadly weapon. Because we are reversing on a different issue, we need not decide whether the instruction given by the court in place of defendant's tendered instruction sufficiently encompassed "fists" within its language. However, since this issue may arise on remand, we note that the supreme court has recognized that fists can be deadly weapons if, in the manner they are used or intended to be used, they are capable of producing death or serious bodily injury. *People v. Ross,* 831 P.2d 1310 (Colo. 1992). If defendant so requests, the jury on remand should be instructed accordingly.

We do not address defendant's remaining contentions because they are unlikely to arise on remand.

The judgment is reversed and the cause is remanded for a new trial.

Judge ROTHENBERG and Judge TAUBMAN concur.