No. 25534

## The People of the State of Colorado v. Richard E. Tapia
(515 P.2d 453)

Decided October 29, 1973.

John P. Moore, Attorney General, John E. Bush, Deputy, Aurel M. Kelly, Assistant, Sara Duncan, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

On the night of May 23, 1970, two rival groups of young people were in Estes Park and had been drinking. According to some testimony, the two groups were in a fight. The defendant, being in one of the groups, shot the victim, a member of the other group, and several months later the victim died as a result. The jury brought in a verdict of voluntary manslaughter. We reverse.

I.

The defendant has presented two assignments of error, the first of which is that the question of second-degree murder should not have been submitted to the jury. So far as is material here, second-degree murder under the statute then in effect may be defined as the unlawful killing of a human with *implied* malice. C.R.S. 1963, 40-2-3(1). The statute provided that malice should be implied when no considerable

provocation appeared. The defendant contends that there was provocation for the shooting. This is true under the testimony of some witnesses, but is not true under the testimony of others. The issue of second-degree murder was therefore properly submitted to the jury.

## II.

■ The defendant tendered an instruction undoubtedly drawn in part under the ruling in *Young v. People,* 47 Colo. 352, 107 P. 274 (1910). *Young* required in an appropriate case an instruction to the effect that a defendant may safely act upon appearances to avoid apprehended danger even though it develops later that the appearances were false and that there was in effect no danger to do him serious injury. There is such a striking parallel between *Young, supra,* and the present case that we feel compelled to follow *Young.*

The testimony of those near the scene of the shooting falls into three categories. In the first, the witnesses did not actually see the shooting. In the second, the victim approached the defendant and others in his group and asked "What's the problem?" or "What is the trouble?", whereupon the defendant drew his revolver and shot the victim. Under the third category, the defendant was cornered in a recessed doorway with no way in which to escape, and the victim and others were beating him. His glasses were knocked to the ground and broken and a dental retainer was dislodged from his teeth. The defendant then drew his revolver from his pocket and fired the shot.

Incidentally but not material here, the defendant testified that, while he produced the revolver, he did not intend to fire it and the shot was accidental. We here are concerned with his other defense of self-defense.

The court, as was the case in *Young, supra,* instructed the jury as follows:

"The Court instructs the jury that one of the defenses interposed by the defendant is what is known as self-defense. Justifiable homicide is the killing of a human being in necessary self-defense of his person against one who manifestly intends or endeavors by violence to kill him or do great

bodily harm to his person.

"A bare fear of being killed or having great bodily harm inflicted upon him to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge.

"If a person kills another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm, the killing was absolutely necessary. And it must appear also that the person killed was the assailant . . . ."

The court refused the following instruction tendered by the defendant:

"The Court instructs the jury that when a person has reasonable grounds to believe that someone is about to do him great bodily harm and there is reasonable ground for believing the danger imminent that such design will be accomplished, he may safely act upon appearances to avoid the apprehended danger, and the killing would be justifiable although it may afterwards turn out that the appearances were false and that there was in fact no danger to do him serious injury, or any danger that it would be done.

"In passing upon the question as to whether or not the defendant had reasonable grounds for believing that there was imminent danger that the deceased was about to kill him or to do him great bodily harm, you should determine this question from the standpoint of the defendant at the time he acted, under his surroundings at the particular instant of time, and determine whether or not he acted as a reasonable and prudent person would have acted under like circumstances. It is not enough that the defendant believed himself in danger, unless the facts and circumstances shown by the evidence are such that in the light of all the facts and circumstances shown by the evidence and known to the defendant at the time, or by him then believed to be true, you can say that as a reasonable person he had grounds for such belief.

"When a defendant is where he has a right to be and is assaulted by the deceased in a way that the defendant honestly and in good faith believes, and the circumstances being such as would induce a like belief in a reasonable man, that he is about to receive at the hands of his assailant great bodily harm, or to lose his life, the defendant, if he did not provoke the assault, is not obliged to retreat or flee to save his life, but may stand his ground, and if necessary take human life."

The first paragraph of the tendered instruction was undoubtedly fashioned from *Young.* The statements contained in the second paragraph of the tendered instruction were sufficiently embraced within the instruction given. Under the version of the facts here which would give rise to the defense of self-defense, retreat was impossible. The third paragraph of the tendered instruction need not therefore have been given.

As to the first paragraph of the tendered instruction, the question for our consideration is whether the instruction given substantially informed the jury as to the law stated in the first paragraph. We might be inclined to answer that question in the affirmative except for the close parallel with *Young.* The ruling in *Young* was approved in *People v. LaVoie,* 155 Colo. 551, 395 P.2d 1001 (1964). In *Young* it was stated:

"[T]he defendant had a . . . right to have a lucid, accurate and comprehensive statement by the court to the jury of the law on the subject of self-defense from his standpoint, upon the supposition that the jury might believe, and accept as true, his testimony, and that of his witnesses . . . .

"It is fundamental that the law of self-defense, which is emphatically a law of necessity, involves the question of one's right to act upon appearances, even though such appearances may prove to have been deceptive; also the question of whether the danger is actual or only apparent, and as well the fact that actual danger is not necessary, in order to justify one in acting in self-defense . . . . When a person has reasonable grounds for believing, and does in fact actually believe, that danger of his being killed, or of

receiving great bodily harm, is imminent, he may act on such appearances and defend himself, even to the extent of taking human life when necessary, although it may turn out that the appearances were false, or although he may have been mistaken as to the extent of the real or actual danger. It is for the jury to say, under all of the testimony and under proper instructions from the court upon the subject, whether appearances of danger were real or apparently real, so as to justify action in self-defense."

The Attorney General in response to the argument of the defendant on this point merely states:

"The instruction complained of is essentially in the language of CRS 1963, 40-2-13, 14 and 15, and as such has been approved by this court in the case of *Hinton v. People,* 169 Colo. 545, 458 P.2d 611 (1969) and *People v. Bercillio,* 179 Colo. 383, 500 P.2d 975 (1972). See also *Vigil v. People,* 143 Colo. 328, 353 P.2d 82 (1960). It was not error to instruct in the language of the statute, when such an instruction has been approved by this court. *Simms v. People,* 174 Colo. 85, 482 P.2d 974 (1971); T. Borrillo, 6 Colorado Practice, § 870."

This, of course, does not respond to the *Young* argument.

The judgment is reversed and the cause remanded with directions to grant a new trial.

MR. JUSTICE LEE does not participate.